UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Ardon P. Cato, II, #316535, | ) | C/A No. 4:09-2110-CMC-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Anthony J. Padula, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Ardon P. Cato ("Petitioner/Cato"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on August 13, 2009. Respondent filed a motion for summary judgment on December 9, 2009, along with supporting memorandum. The undersigned issued an order filed December 15, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response.

## I. PROCEDURAL HISTORY

There has been no significant opposition filed as to the procedural history as set out by the Respondent. Therefore, the undisputed procedural history as set out in Respondent's memorandum will be discussed below.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

Petitioner is currently incarcerated at the Lee Correctional Institution pursuant to orders of commitment of the Clerk of Court for Horry County, S.C. Petitioner was indicted by the Horry County Grand Jury for numerous charges including murder (05-GS-26-3412), assault and battery with intent to kill (05-GS- 26-3409), and assault and battery with intent to kill (ABWIK)(05-GS-26-3410). Petitioner was represented by retained counsel J.M. "Buddy" Long, III. On July 17, 2006, the date of Petitioner's trial on the above charges, Petitioner pleaded guilty to murder, ABWIK, and ABWIK. (The above indictments). Petitioner pleaded guilty before the Honorable Stephen H. John, Circuit Court Judge. The State agreed to dismiss two other indictments for ABWIK in exchange for the plea. There was no recommendation by the State as to a sentence. Judge John sentenced Petitioner to forty-two (42) years on the murder charge and twenty (20) years each on the ABWIK charges to run concurrent with the murder charge. Petitioner did not appeal his convictions or sentences.

Petitioner filed a PCR application on September 6, 2006. (2006-CP-26-4399). In his original application, Petitioner stated no grounds. Respondent filed its Return on November 15, 2006. At his PCR hearing, Petitioner was represented by Paul Archer, Esq. An evidentiary hearing into the matter was convened on April 3, 2007, at the Horry County Courthouse before the Honorable Paula H. Thomas, Circuit Court Judge ("the PCR Court"). Petitioner moved to amend his PCR application at the PCR evidentiary hearing. At the evidentiary hearing, Petitioner asserted claims of ineffective assistance of counsel. Petitioner claimed counsel gave him erroneous advice, counsel conducted an inadequate investigation and gave him erroneous advice regarding a defense, counsel did not seek a plea bargain to voluntary manslaughter, and counsel breached his duty of loyalty and labored under a conflict of interest. On May 29, 2007, Judge Thomas issued a written Order of Dismissal

2

dismissing all of Petitioner's claims of ineffective assistance of counsel with prejudice. (See Order of Dismissal App. pp. 95-103). The Order of Dismissal was filed June 4, 2007.

Petitioner appealed the denial of his application for post-conviction relief to the South Carolina Supreme Court by way of a <u>Johnson</u> Petition for Writ of Certiorari. Petitioner was represented in the appeal by M. Celia Robinson, Appellate Defender, of the S.C. Commission on Indigent Defense/Division of Appellate Defense. In the <u>Johnson</u> Petition, Petitioner raised the following issue:

> Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance of counsel which affected and prejudiced the outcome for petitioner?

In the <u>Johnson</u> Petition, Petitioner argued counsel never advised him of the results of his ballistics investigation. Ms. Robinson, Petitioner's collateral appellate counsel, certified the appeal was without merit. The case was transferred to the South Carolina Court of Appeals by Order of the South Carolina Supreme Court. On May 28, 2009, the South Carolina Court of Appeals denied the petition for certiorari and granted appellate counsel's request to withdraw. The Remittitur was issued on June 15, 2009. Petitioner filed his habeas petition on August 13, 2009.

## II. FEDERAL HABEAS GROUNDS

GROUND ONE:     Did the PCR Court err in denying relief on trial counsel's failure to investigate?

    a.     At the PCR hearing petitioner raised concerns about information contained in the Brady material, specifically the ballistics report . . . [T]rial counsel did not testify that he discussed the ballistics report with petitioner. Petitioner was insistent that trial counsel failed to properly investigate and relay this information to him. Exhibit (B) shows that trial counsel clearly failed to properly investigate. Petitioner maintains that because trial counsel failed to investigate and discuss with him the discrepancies shown in Exhibit (A), he

3

>was not able to make an informed decision and was prejudiced from trial proceedings where a reasonable challenge to his questionable convictions should have been presented with the outcome clearly to be in his favor.

GROUND TWO: Did the PCR Court err in denying relief on trial counsel's failure to advise client of defense?

> a. At the PCR hearing, petitioner raised concerns about information contained in the Brady material . . . Trial counsel admitted at the PCR hearing that the number of wounds received by the victim[s] versus the number of shell casings found, inferring the possibility of another shooter, was a defense. . . . If they had been paired correctly that would have left one spent .380 shell casing without a fired bullet that was recovered making it impossible to prove that it struck any of the victims. Petitioners convictions therefore become questionable . . . Although trial counsel admitted that he was aware of this dilemma he did not testify that he discussed this with petitioner in the form of a constructed defense. Thus, petitioners constitutional right to effective assistance of counsel has been violated by a disregard of the indispensable element of the effective performance of trial counsel's responsibilities, which is to act independently of the prosecution and oppose it in adversary litigation. Petitioner established that he was prejudiced by counsel's ineffective representation through his testimony that, but for counsel's failure to advise him of a constructed defense, he would have insisted on proceeding to trial to challenge his questionable convictions, with the outcome clearly to be in his favor. Moreover Exhibit (D) details that a witness gave police the description of another shooter who does not resemble petitioner, and who left the club from a different exit (described as being at the back of the business), than where petitioner was alleged to have been . . . . Counsel entirely failed to subject the prosecutions case to a meaningful adversarial challenge, which is a denial of petitioner's [S]ixth [A]mendment rights. . . .

(Petition).

### III. SUMMARY JUDGMENT

On December 9, 2009, the Respondent filed a return and memorandum of law in support of their motion for summary judgment. Petitioner filed responses to the motion.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972),

and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. <u>See</u> Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the <u>Celotex</u> case, the defendants are "entitled to judgment as a matter of law" under Rule 56(c) because the Petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-323.

## IV. STANDARD OF REVIEW

Since Catoe filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the Petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts

the governing law set forth in [Supreme Court] cases . . . A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.

[A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.

Respondent asserts that Petitioner is not in violation of the AEDPA statute of limitations.

## V. MERITS

### GROUND ONE and GROUND TWO

As Grounds One and Two both pertain to the same investigation and defense, they will be addressed together. As set out above, in Ground One, Petitioner asserts as follows:

Did the PCR Court err in denying relief on trial counsel's failure to investigate?[2]

---

[2] Respondent argues that even though Petitioner contends that a portion of Ground One of his federal habeas petition was not ruled on by the PCR court, Respondent does not agree and

7

In Ground Two, Petitioner raises the following issue:

> Did the PCR Court err in denying relief on trial counsel's failure to advise client of defense?

Respondent argues there is no merit to this ground because the PCR addressed the claim and found that trial counsel did investigate the ballistics in this case and the possibility of a second shooter and advised Petitioner regarding these possible defenses. Petitioner has failed to show the PCR Court reached an unreasonable determination given the evidence and record before the PCR Court.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to

---

believes the PCR did address the issues raised in Ground One and Two of the Petition. Further, if that portion of Ground One-whether trial counsel ever explained his investigation or the results of this ballistics investigation to Petitioner-was not ruled upon at PCR it would be procedurally barred. The undersigned finds that the PCR did rule on the issues raised in Ground One and will be addressed on the merits below.

effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A Petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination .

9

. . . is defective." Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable." Therefore, a court analyzing the prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." See Williams v. Taylor, Nos. 98-14, 98-16, 1998 WL 883336 (4th Cir. Va. Dec. 18, 1998) (quoting Lockhart, at 369-70).

A review of the PCR court's order of dismissal reveals the PCR Judge found as follows:

Applicant failed to raise any allegations or grounds for relief in his initial application. During the PCR hearing, this Court required him to clearly state the grounds on which he wished to proceed and warned him all other grounds would be deemed abandoned. The Applicant announced he wished to proceed on the ineffective assistance of counsel grounds discussed below.

. . .

Applicant's criminal convictions arise from a nightclub incident in which several people were shot, including Anthony Hemingway, who was killed, and Elisa Nahhrum, who was paralyzed. Although Applicant takes issue with some details, it is undisputed that he left the nightclub following an altercation with other individuals, retrieved a gun from a car outside, returned, opened fire into the nightclub, and then drove away from the premises. It is also undisputed that none of the persons shot were those with which Applicant had the earlier altercation. (Plea Tr. P. 8, line 12–p. 12, line 4).

During Applicant's guilty plea, the court advised Applicant of the sentencing ranges for the crimes he was pleading guilty to, explained the offenses are classified as violent and most serious, and that he was pleading without any sentencing negotiations or recommendations from the State. (Plea tr. P. 3, line 11–p. 5, line 1). Applicant told the court he wished to enter guilty pleas, that he understood what he was doing and the constitutional rights he was waiving, that he was pleading guilty voluntarily, that he was pleading guilty because he was guilty, and that he was satisfied with his attorney. (Plea tr. P. 5, line 2–p. 7, line 19).

. . .

Applicant testified he hired plea counsel because counsel explained the law of voluntary manslaughter to him, but counsel gave him bad advice, rendering his guilty plea involuntary. Applicant complains plea counsel only met with him four times for a total of 20 minutes. Applicant also complains there were .380 rounds and 9

10

millimeter rounds fired at the nightclub and ballistics might have shown the .380 rounds did not come from his 9 millimeter gun, demonstrating there must have been another shooter. Applicant contends he was a victim that night, explaining that one man swung at him twice. He believes the evidence showed he committed voluntary manslaughter rather than murder. He also testified he told plea counsel that when he fired shots into the club, he fired up high so as to frighten rather than hurt people. He admitted to firing four shots into the club. He asserts he was more frustrated than angry and came back to the club within 30 to 45 seconds after leaving. Counsel pressured Applicant to plead guilty even though applicant did not think pleading guilty to murder was in his best interest. Finally Applicant alleged that when he arrived at the courthouse on the day of his plea, he had not reached a decision of whether to go to trial or attempt plea negotiations, and that he pled guilty without a plea deal.

(Tr. 96-99).

Further, the PCR court found that counsel testified that he investigated the evidence that .380 and 9 mm rounds were fired at the nightclub hoping to find evidence that there was a second responsible shooter. (Order of Dismissal, tr. 99). Counsel testified that in addition to the different caliber ammunition used, there was some question about whether Applicant fired enough shots to have caused all of the wounds inflicted. (Id.). However, upon investigation, Counsel testified that the evidence did not support the two-shooter theory. (Id.). Counsel talked with the president of the gun's manufacturer (Highpoint) who told him it was a little known fact that a 9 mm Highpoint would fire .380 rounds. (Id.). Counsel also testified that when Applicant's gun was recovered there were both .380 and 9mm rounds in the magazine. (Id.). Moreover, ballistics showed all of the brass found as well as the bullet recovered from Anthony Hemingway's body came from Applicant's gun. (Id.).

The PCR Court further found the following:

Counsel testified he explained to Applicant that even if he intended to shoot at the ceiling or over people's heads, he would still [be] responsible for the injuries and death suffered because of the risk of ricochet. Trial counsel thought the evidence of Applicant leaving the club, retrieving a gun, and returning would be sufficient for the

11

> State to prove a cooling off period, making voluntary manslaughter verdict unlikely. Counsel admitted both he and Applicant were under pressure at the time of Applicants pleas as the State had its ballistics evidence firmed up, would no longer recommend a sentence if Applicant pled guilty, and was ready to go to trial. Concerned about the lack of a sentencing recommendation, counsel spoke with the plea judge and the prosecutor in chambers, and the plea judge stated sentence would be in the range of 40-45 years if Applicant plead guilty. After counsel advised Applicant of this, Applicant elected to plead guilty.
>
> Applicant has failed to demonstrate that counsel gave him bad advice or that his plea was involuntary. There was ample evidence to support the plea to murder, and counsel's advice regarding Applicant's concerns and theories was sound. Applicant asserts he was pressured to plead guilty, but the transcript shows he pleaded guilty freely and voluntarily and that his plea was not the result of promises, threats, or force. (Plea tr. P. 6, lines 12-24). The Court finds he knew what he was pleading to and what he was doing and made the decision to plead guilty after counsel advised him of the sentencing range the plea judge said he would consider. This allegation is denied and dismissed as it is without merit.

(Tr. 99-100).

As to Petitioner's claim regarding inadequate investigation and advice, the PCR court found the following:

> This Court finds Applicant has failed to show counsel's investigation was inadequate or that his advice regarding potential defenses was inaccurate. Counsel did investigate this case, going so far as to speak with the president of the gun's manufacturer. Although Applicant contends he did not mean to shoot anyone and had no malice toward the victims, the evidence is he fired several shots into a crowded nightclub causing injuries and a death. Furthermore, because he fired several shots into a crowded nightclub, this Court finds evidence regarding the lighting where he fired his shots would not have been helpful to the defense. This court finds there was ample evidence to support Applicant's guilty pleas and that counsel's performance was neither deficient nor prejudicial. Accordingly[,] this allegation is denied and dismissed.
>
> Applicant alleges counsel was ineffective for failing to negotiate a plea to voluntary manslaughter. Trial counsel testified the State was never willing to allow the Applicant to plead guilty to less than murder and that Applicant rejected the State's forty (40)-year plea offer because at the time he still was unwilling to plead guilty to murder. Trial counsel made reasonable efforts to secure a favorable plea offer for Applicant and had no power to compel the State to accept voluntary manslaughter plea. Therefore, this allegation is denied and dismissed.

(Tr. 101).

The undersigned has reviewed the record and concludes that Respondent's motion for summary judgment should be granted on this issue. The record supports the PCR judge's finding that the Petitioner has not demonstrated that his attorney's performance was deficient by showing that his representation fell below an objective standard of reasonableness and, further, he has not shown that the attorney's performance actually prejudiced him.[3] As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Hill and Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. The state court decisions did not involve a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); Williams, supra. Thus, the undersigned recommends that the Respondents' motion for summary judgment be granted on this issue.[4]

---

[3] During the plea, Petitioner stated to the court that "[w]hen I was going through the door [of the nightclub] the bouncer stopped me from going though the door, and I raised my hand up as high as I could, over–to shoot over everyone. My intentions were to scare the guys, to kind of let them know, okay, you hit the wrong person, you know. But I was intending to shoot over everyone, maybe hitting a wall or the ceiling. . ." (Plea tr. 30). Petitioner further testified during the plea that "[i]t was very stupid to shoot in a club full of people. I thought for sure no one got hit, because I raised my hand up as high as I could, and I only shot four times. I shot four shots. I wasn't intending to shoot the whole round." (Tr. 31).

[4] Even assuming, *arguendo,* that Petitioner's counsel was found to be ineffective with respect to these issues, Petitioner has not shown prejudice. Petitioner failed to show that he would not have pleaded guilty and would have insisted on going to trial. Petitioner entered into a plea agreement whereby the state agreed to dismiss two other indictments for ABWIK in exchange for the plea. Thus, Petitioner entered a plea and received 42 years on the murder

As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Hill and Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. The state court decisions did not involve a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); Williams, supra. Thus, the undersigned recommends that the Respondent's motion for summary judgment be granted on this issue.

## VI. CONCLUSION

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (document #17) be GRANTED and Petitioner's petition for Writ of Habeas Corpus be denied, and this Petition dismissed.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
July 26, 2010   United States Magistrate Judge
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

charge and twenty (20) years on the ABWIK charges to run concurrent with the murder charge. The court questioned the Petitioner if he understood that the potential sentence regarding murder could be anywhere from a "minimum of thirty years up to life in prison" and the potential sentence for ABWIK "is zero to twenty years." (Tr. 4-5). Petitioner stated that he understood. Therefore, Petitioner was facing life in prison plus eighty years on all the charges if convicted at trial.

14